# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40615

United States Court of Appeals
Fifth Circuit

**FILED**
April 12, 2021

Lyle W. Cayce
Clerk

KARISSA JOHNSON,

> Plaintiff–Appellee,

v.

CITY SECRETARY THERESA BOWE; ANITA RODRIGUEZ; KEVIN COLEMAN; STEVEN KEITH STARY,

> Defendants–Appellants.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 6:19-CV-11

---

Before OWEN, Chief Judge, and SOUTHWICK and OLDHAM, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:*

Karissa Johnson sued several city officials pursuant to 42 U.S.C. § 1983, alleging that they violated her free speech rights under the First Amendment, including engaging in retaliation. The city officials moved to dismiss for failure to state a claim and on qualified immunity grounds. The district court denied the motion to dismiss, holding that a qualified immunity determination was premature without discovery. The city officials filed an interlocutory appeal

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40615

with this court.  We reverse in part, dismiss for lack of jurisdiction in part, and remand.

## I

In June 2017, Karissa Johnson and her husband decided to deliver their first daughter at their home in Yoakum, Texas with the help of two midwives. When the baby went into the breech position right before delivery, the midwives directed Johnson's husband to call for emergency services to take his wife to the nearest hospital.  Four emergency medical technicians (EMTs) responded to the call.  They included Steven Stary, who worked for Yoakum's fire department, and James Hercheck, who was the captain of Yoakum's fire department.  Stary allegedly refused to help Johnson and instead argued with Johnson's husband about "the way he placed the call for service."

While other EMTs began to move Johnson into the ambulance, the midwives advised the EMTs to place Johnson "on her side to decrease stress on the baby."  Johnson alleged that Stary delayed transporting her because he argued with the midwives and demanded that Johnson be placed on the stretcher on her back.  Hercheck overruled Stary and had Johnson taken to the hospital on her side.  Johnson gave birth to her daughter at the hospital. Johnson's daughter was so oxygen-deprived that the attending physician believed she would not have lived had there been any additional delays in obtaining treatment.

Stary allegedly began to "spread rumors of the situation at . . . Johnson's home to unrelated third parties," "criticizing her husband's placement of the call for emergency services to those who had no right to that information." Johnson believed that this gossip was a violation of federal health privacy laws.

In October 2017, Johnson asked Kevin Coleman, Yoakum's city manager, to add her to the agenda for the upcoming city council meeting. Johnson informed Coleman that she wanted "to state a complaint about a city

employee." Coleman refused Johnson's request, citing Yoakum's policy not to hear complaints regarding employees at public city council meetings. Coleman instead had Johnson fill out a written complaint, which he said he would handle privately.

Johnson suspected that this treatment was discrimination based on viewpoint, including her identity as speaker. In 2015, the city council had allowed employees of the police and fire departments "to complain about each other." The city council had also "allowed praise of various city employees to be placed on the agenda through the years." These agenda items included praise for a librarian and for a finance director. There had also been "a history of both complaining [about] and praising" city employees at city council meetings over the years.

In response to her suspicions, Johnson hired an attorney; the attorney wrote the city council and Coleman. The attorney alleged that Coleman and the city council "were engaging in a prior restraint" of Johnson's speech and asked "that she be placed on the council's agenda." The city's attorneys again cited the policy against having employee complaints placed on the city council agenda. The city's attorneys told Johnson "that the only city employee she could complain about in a public meeting was Kevin Coleman." The rationale was that the city manager was the only city employee about whom the city council made employment decisions, so the city manager was the only employee about whom the city council would hear complaints at public city council meetings. The city's attorneys thought that since the city manager oversaw all other city employees, complaints about those employees should be made solely to the city manager.

Johnson asked to be placed on the upcoming agenda so she could complain about Coleman not placing her initial complaint on the previous agenda. Her request was granted, and Johnson read her complaint about

Coleman at the November 2017 city council meeting. Anita Rodriguez, Yoakum's mayor, then reminded Johnson of the city's policy against placing complaints about city employees on the agenda. Johnson wanted her complaint against Stary in the public record so that Stary's alleged actions, which almost cost Johnson's daughter her life, could be known to the public. Johnson was concerned that another municipality would hire Stary if he were allowed to resign quietly. In fact, in January 2018, Stary did resign from Yoakum's fire department and was hired by another nearby local government.

In May 2018, Johnson asked Coleman to place her on the agenda "to give praise to Fire Department Captain Hercheck and other EMTs and firefighters employed by" Yoakum. Coleman placed Johnson on the May agenda but "reiterated to her that she would not be allowed to criticize anyone during her comments." At the meeting, Johnson read a prepared statement. The council allowed her to thank Hercheck but not criticize Stary. Johnson said, "[Herchek] . . . remained cool, calm, collected, and in control while Mr. Stary was busy doing an excellent job criticizing my husband about how he placed the call for service." Rodriguez "physically reacted" when Johnson said Stary's name and glanced over at Theresa Bowe, Yoakum's city secretary. When Johnson said Stary's name a second time, Rodriguez said, "[P]oint of order." Bowe stated that employee complaints were not allowed in public city council meetings, and Rodriguez then approved a recess "to bring the meeting to order."

Johnson left the podium without speaking another word, gathered her infant daughter, and proceeded to leave the city council's chambers. Bowe told Johnson that they would speak of what had just happened outside. Johnson said she had no intention of discussing it with Bowe and then left the building. Bowe followed Johnson outside, and with several onlookers, castigated her for

No. 19-40615

complaining about Stary.  Bowe, Rodriguez, and Coleman then allegedly had a police officer follow Johnson and her daughter as they drove away.

Johnson sued the City of Yoakum, as well as Rodriguez and Bowe, in federal district court "for retaliating against her for exercising First Amendment rights."  She also sued for injunctive and declaratory relief to prevent Rodriguez, Bowe, and Coleman from enforcing the unwritten policy prohibiting Johnson from making employee complaints at public city council meetings.  She further sued the City of Yoakum for numerous forms of declaratory relief and Stary for a declaration that he violated federal health privacy laws.  The city officials made a motion to dismiss for failure to state a claim and qualified immunity.  The district court denied the motion on the basis that it was premature, and that discovery was necessary.  This interlocutory appeal followed.

## II

We first examine our jurisdiction.  The collateral order doctrine allows us "to review the 'small category of decisions that, although they do not end the litigation, must nonetheless be considered final.'"[1]  Under the collateral order doctrine, we have jurisdiction to hear interlocutory appeals regarding the denial of qualified immunity on a motion to dismiss.[2]  "[Q]ualified immunity applies only to claims for money damages."[3]  Municipalities and public officials

---

[1] *Houston Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 268 (5th Cir. 2007) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 41-42 (1995)).

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) ("[T]his Court has been careful to say that a district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." (citing *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996))); *Brown v. Miller*, 519 F.3d 231, 238 (5th Cir. 2008); *see also Zarnow v. City of Wichita Falls*, 500 F.3d 401, 406 (5th Cir. 2007).

[3] *Waller v. Hanlon*, 922 F.3d 590, 598 (5th Cir. 2019) (citing *Morgan v. Swanson*, 659 F.3d 359, 365 n.3 (5th Cir. 2011) (en banc)); *see also Robinson v. Hunt County*, 921 F.3d 440, 452 (5th Cir. 2019) ("Qualified immunity, however, is a defense to monetary damages and 'do[es] not extend to suits for injunctive relief under 42 U.S.C. § 1983.'" (alteration in original) (quoting *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1051 n.1 (5th Cir. 1997))).

in their official capacity do not enjoy qualified immunity against § 1983 actions—only officials in their individual capacities may assert qualified immunity.[4] Johnson's only claims for money damages against officials in their individual capacities are her First Amendment retaliation claims against Rodriguez and Bowe. Therefore, this court has jurisdiction over those claims under the collateral order doctrine.

The city officials urge us to exercise pendent interlocutory appellate jurisdiction over other issues in this case. The exercise of pendent interlocutory appellate jurisdiction over additional claims, when permitted, is discretionary,[5] and such jurisdiction "is looked on with disfavor," with exceptions not relevant to this case.[6] We therefore decline to exercise pendent interlocutory appellate jurisdiction here, and we will only consider the First Amendment retaliation claims against Rodriguez and Bowe in their individual capacities. All other claims that the city officials ask us to review are dismissed for lack of appellate jurisdiction.

---

[4] *See Zarnow*, 500 F.3d at 406 (citing *Burge v. Par. of St. Tammany*, 187 F.3d 452, 476 (5th Cir. 1999)).

[5] *See, e.g.*, *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014) ("Pendent appellate jurisdiction may exist where, in the interest of judicial economy, courts have discretion to review interlocutory rulings related to independently appealable orders when the two are inextricably intertwined." (internal quotation marks omitted) (quoting *Byrum v. Landreth*, 566 F.3d 442, 449 (5th Cir. 2009))); *Morin v. Caire*, 77 F.3d 116, 119 (5th Cir. 1996); *see also Escobar v. Montee*, 895 F.3d 387, 392-93 (5th Cir. 2018). We note that the discretion to exercise pendent interlocutory appellate jurisdiction does not include pendent party interlocutory appellate jurisdiction over parties that the collateral order doctrine does not already bring into the appeal. *See Swint*, 514 U.S. at 38 ("The commission's appeal, we hold, does not fit within the 'collateral order' doctrine, nor is there 'pendent party' appellate authority to take up the commission's case."); *Zarnow*, 500 F.3d at 407 ("[W]e have refused to recognize 'so strange an animal as pendent party interlocutory appellate jurisdiction.'" (quoting *McKee v. City of Rockwall*, 877 F.2d 409, 413 (5th Cir. 1989))); 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3937 (3d ed. 2019) (noting that "the Supreme Court has rejected pendent party appeal jurisdiction" in the context of qualified immunity).

[6] *Zarnow*, 500 F.3d at 407 (internal quotation marks omitted) (quoting *McKee*, 877 F.2d at 413).

No. 19-40615

### III

Johnson contends that "[b]y attaching evidence to their Motion to Dismiss," the city officials "transformed" that motion "into a Motion for Summary Judgment before discovery had been conducted." We disagree. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."[7] Documents can also be considered part of the pleadings if the court may take judicial notice of them.[8]

Here, the city officials attached to their motion to dismiss the agenda and minutes of the city council meeting at which Johnson complained about Coleman, the agenda and minutes of the city council meeting at which Johnson praised Hercheck, the policy adopted by the city for employee discipline, and the policy adopted by the city for the agenda procedure of city council meetings. These documents are verified by an affidavit from Bowe. Johnson's complaint references both agendas and both policies. These documents are also central to Johnson's claims of viewpoint discrimination. The district court correctly considered them part of the pleadings. Similarly, since courts may take judicial notice of public records like a city council's meeting minutes, the district court also properly considered the minutes as part of the pleadings.[9] The documents the city officials attached to their motion to dismiss did not transform that motion into a motion for summary judgment as Johnson

---

[7] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

[8] *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (first citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); and then citing *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005)).

[9] *See Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1062 n.24 (7th Cir. 2016) ("We may take judicial notice of the City Council's meeting minutes because they are a document in the public record." (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008))); *see also* FED. R. EVID. 201(b); *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 954 n.3 (9th Cir. 2011).

No. 19-40615

asserts.

## IV

To negate Rodriguez's and Bowe's qualified immunity defenses to Johnson's claims of retaliation against them in their individual capacities, Johnson must show that (1) a violation of a constitutional right is alleged, and (2) the right was clearly established at the time of the violation.[10]

To succeed on her claim that Rodriguez and Bowe violated Johnson's constitutional right to be free from First Amendment retaliation, Johnson must establish that: (1) she was "engaged in constitutionally protected activity," (2) the city officials' actions caused her "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the city officials' "adverse actions were substantially motivated against [Johnson's] exercise of constitutionally protected conduct."[11]

Johnson's retaliation claim fails because she cannot show that she "suffer[ed] an injury that would chill a person of ordinary firmness from continuing to engage in" her speech.[12]   In her brief, Johnson states that her injuries were being "publicly shamed" by Bowe in front of a small gathering of people outside the city council meeting, being "chased away" from the city council meeting by a police officer, and being criticized by Bowe to former colleagues.  We are bound by this court's precedents, which state that these alleged injuries are not enough.[13]

In *Colson v. Grohman*, we observed that the plaintiff "alleged only that she was the victim of criticism, an investigation (or an attempt to start one),

---

[10] *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

[11] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (first citing *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001); then citing *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001); and then citing *Lucas v. Monroe County*, 203 F.3d 964, 973 (6th Cir. 2000)).

[12] *Id.*

[13] *See id.*

and false accusations: all harms that . . . are not actionable under our First Amendment retaliation jurisprudence."[14] If criticism, false public accusations, and an attempted criminal investigation are not substantial enough injuries to "chill a person of ordinary firmness,"[15] then neither are Johnson's lesser injuries of enduring some criticism and being followed by a police officer on a single occasion when leaving a public meeting.

Johnson's First Amendment retaliation claims against Bowe and Rodriguez in their individual capacities fail the first prong of the qualified immunity test. Accordingly, we need not consider the second prong of the qualified immunity test. Bowe and Rodriguez are entitled to qualified immunity in their individual capacities against Johnson's First Amendment retaliation claims as they are currently pleaded.

*     *     *

For these reasons, we REMAND Johnson's First Amendment retaliation claims against Bowe and Rodriguez in their individual capacities, and direct that these claims be dismissed based on qualified immunity; we DISMISS for lack of jurisdiction the remaining issues on appeal.

---

[14] 174 F.3d 498, 512 (5th Cir. 1999); *see also Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 239-40 (5th Cir. 2016); *Matherne v. Larpenter*, 216 F.3d 1079, 1079 (5th Cir. 2000) (unpublished table decision); *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000); *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998); *Pierce v. Tex. Dep't of Crim. Just., Institutional Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).

[15] *Keenan*, 290 F.3d at 258; *see Colson*, 174 F.3d at 512.