# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-3455

_____

James Spann, also known as Melvin Ford,

*Plaintiff - Appellee.*

v.

George A. Lombardi, MO DOC Director; Dave Dormire, MO DOC Divisional
Director; Alan Earls, MO DOC Deputy Divisional Director; Jay Cassady, JCCC Superintendent,

*Defendants - Appellants*,

Brian Schmutz, FUM; Jim Wakeman, Maintenance Supervisor,

*Defendants - Appellants*,

Nick Miller,

*Defendant - Appellant*,

Timothy Murray, Correctional Officer; Noel Obi; April Purifoy, Mailroom Supervisor,

*Defendants - Appellants*,

Shane Counts, Correctional Officer,

*Defendant - Appellant*,

Michael Cahalin, JCCC Lieutenant; Raina Martin, JCCC FUM,

*Defendants - Appellants*,

Kelly Deardeuff, JCCC Correctional Officer,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 16, 2022
Filed: April 24, 2023

_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

James Spann sued Missouri prison officials under 42 U.S.C. § 1983, alleging deprivations of his constitutional rights while incarcerated. The officials moved for summary judgment based on qualified immunity, and the district court denied the motion on two sets of claims. The officials appeal a portion of the order, and we reverse.

I.

Spann was an inmate in the custody of the Missouri Department of Corrections. In April 2014, Spann's cellmate accused him of sexual assault. A prison official investigated the allegation and compiled a report that included interviews, witness statements, photographs, and a test from the incident that detected a "stain consistent with semen."

In July 2014, prison officials issued Spann notice of a "major conduct violation" based on the investigation report. The notice informed Spann of his rights and identified the alleged victim, the date of the sexual assault, and the prison rule that he allegedly violated. Under the department's policy, an inmate who is cited for a major conduct violation is entitled to a disciplinary hearing in front of an adjustment board. Before Spann's hearing, one member of the adjustment board sent an e-mail to another member stating, "[h]e is guilty." After a hearing, the board found Spann guilty of sexually assaulting the cellmate, and transferred him from general population to administrative segregation as a result.

According to Spann's evidence, he was housed in a single cell where the lights were often left on for several days. He was confined to his cell for up to twenty-three hours a day and had limited human interaction. He was prohibited from attending religious services and was not permitted to attend vocational training or educational programs. He also lost eligibility for parole due to his placement in administrative segregation. Spann's confinement status was subject to 90-day reviews, but he remained in administrative segregation for almost six years until his release from prison.

Between 2014 and 2016, Spann filed multiple grievances based on his conditions of his confinement. After the grievances were filed, prison officials cited Spann for two conduct violations—one for possessing tobacco and another for passing prescription medications. Spann asserts that the allegations were falsified and made in retaliation for his filing of grievances.

In three consolidated lawsuits, Spann sued several prison officials under 42 U.S.C. § 1983. Among other claims, he alleged that officials conducted his disciplinary hearing in violation of his rights under the Due Process Clause of the Fourteenth Amendment, and that officials violated his rights under the First Amendment by retaliating against him for filing grievances.

In 2018, the district court denied a motion of the officials for summary judgment, but this court reversed in part and remanded for further proceedings. *Spann v. Lombardi*, 960 F.3d 1085 (8th Cir. 2020). On remand, the district court denied a renewed motion for summary judgment on Spann's due process and retaliation claims. The court ruled that the officials allegedly violated due process rights that were clearly established in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and that genuine disputes of material fact existed as to the retaliation claims.

II.

A public official is entitled to qualified immunity on a motion for summary judgment unless a plaintiff presents sufficient evidence to show that the official violated a clearly established right of the plaintiff. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For a right to be "clearly established," the law must have been sufficiently clear at the time of the official's conduct to inform every reasonable official that what he was doing violated that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff need not cite "a case directly on point," but "controlling authority" or "a robust consensus of cases of persuasive authority" must have placed "the statutory or constitutional question beyond debate." *Id*. at 741-42 (internal quotations omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quoting *al-Kidd*, 563 U.S. at 742).

The officials argue that they are entitled to qualified immunity on Spann's due process claim, because Spann had no clearly established liberty interest in avoiding assignment to administrative segregation. *See Hamner v. Burls*, 937 F.3d 1171, 1179 (8th Cir. 2019). Prisoners have a liberty interest in freedom from conditions of confinement that impose "atypical and significant hardship" relative to "ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration

-4-

and degree of restrictions bear on whether a change in conditions imposes such a hardship. *Id*. at 486.

Spann maintains that *Wilkinson v. Austin*, 545 U.S. 209 (2005), clearly establishes a liberty interest on comparable facts. In *Wilkinson*, the Court held that Ohio prisoners had a liberty interest in avoiding assignment to a maximum-security prison where the inmates experienced indefinite placement with only annual reviews, disqualification from parole consideration, and an environment with little human contact. 545 U.S. at 223-24. Officials in this case reviewed Spann's status in administrative segregation more frequently, but we need not decide whether *Wilkinson* nonetheless clearly establishes that Spann's transfer to administrative segregation interfered with a liberty interest.

Even assuming for the sake of analysis that Spann enjoyed a clearly established liberty interest in avoiding assignment to administrative segregation, it was not clearly established that he was entitled to the procedures set forth in *Wolff v. McDonnell*, 418 U.S. 539. *Wolff* involved the deprivation of good-time credits that resulted in a longer term of imprisonment. *Id*. at 554. In *Wilkinson*, however, the Court conducted a procedural due process analysis under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and concluded that the *Wolff* procedures do not apply when a prisoner is transferred to administrative segregation. 545 U.S. at 225. Instead, a transfer to administrative segregation requires only informal, nonadversary due process procedures like those set forth in *Hewitt v. Helms*, 459 U.S. 460 (1983), and *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979). *See Wilkinson*, 545 U.S. at 228-29; *Westefer v. Neal*, 682 F.3d 679, 684 (7th Cir. 2012).

In view of *Wilkinson*, *Hewitt*, and *Greenholtz*, a reasonable official could have believed that the procedures applied in Spann's case were constitutionally sufficient. Informal due process requires only "some notice of the reasons for the inmate's

placement . . . and enough time to prepare adequately for the administrative review." *Westefer*, 682 F.3d at 684 (internal quotations omitted). An inmate must be given "an opportunity to present his views" to a neutral decisionmaker, but is not entitled to a hearing with the inmate present. *Id*. at 685 (internal quotation omitted). "If the prison chooses to hold hearings, inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses." *Id*. Informal due process also requires a periodic review of placement in administrative segregation. *Id*. at 686.

The procedures applied here meet the informal due process standard. The officials gave Spann adequate notice of the reasons for his placement. The notice informed Spann of his rights and identified the alleged victim, the date of the sexual assault, and the prison rule that he allegedly violated. After receiving notice, Spann had nearly a month before the hearing to prepare a defense, and he was able to present a written statement in his defense. Officials satisfied the periodic review requirement by assessing Spann's status in administrative segregation every ninety days.

Spann complains that one of the decisionmakers allegedly prejudged the disciplinary decision by asserting Spann's guilt in an e-mail to a colleague before the hearing. He cites no authority, however, that an official who expresses a view on a disciplinary matter before the hearing occurs is not a "neutral decisionmaker" or otherwise deprives the inmate of due process. No final disciplinary decision was rendered in Spann's matter until the decisionmakers conducted a hearing and received Spann's submission. We may assume that it would be best for a decisionmaker to withhold comment until the proceedings are completed, but there is no clearly established constitutional right to that pristine process.

For these reasons, we conclude that the procedures afforded to Spann were adequate under the standard of informal, non-adversary due process approved in

*Wilkinson* for a transfer to administrative segregation. The officials are therefore entitled to qualified immunity on Spann's due process claim.

III.

On Spann's allegations of unlawful retaliation under the First Amendment, the officials appeal only a claim concerning alleged retaliatory discipline. This claim is governed by *Hartsfield v. Nichols*, 511 F.3d 826 (8th Cir. 2008). *Hartsfield* established that "[a]n inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." *Id*. at 829. Claims of retaliation fail, however, if the inmate actually violated a prison rule. *Id*. "Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Id*. "[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id*. at 831.

Spann maintains that officials issued two false conduct violations in retaliation for his filing of grievances. The first violation report, filed by Officer Deardeuff, accused Spann of possessing tobacco. The second report, prepared by Officer Counts, alleged that Spann impermissibly asked an official to deliver prescription medication to another inmate. Both reports relied on the reporting officer's personal knowledge and detailed the conduct underlying the charges with specificity. An impartial decisionmaker found the violations after an informal hearing at which Spann was allowed to call witnesses and to make a statement. The violation reports regarding Spann's misconduct meet the "some evidence" standard established in *Hartsfield*, and the officials are thus entitled to qualified immunity on the claims alleging retaliatory discipline.

* * *

For the foregoing reasons, we reverse the order of the district court denying qualified immunity on Spann's due process claims and retaliation claims arising from prison disciplinary actions. The officials do not appeal the denial of summary judgment on Spann's other retaliation claims, and those allegations remain pending in the district court.

_____