Cite as 2025 Ark. App. 201

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-24-362

| | | |
|---|---|---|
| MORRIS KOONTZ | | Opinion Delivered April 9, 2025 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION [NO. 60CV-23-3800] |
| V. | | |
| DEXTER PAYNE, DIRECTOR, ARKANSAS DIVISION OF CORRECTION; AND WILLIAM STRAUGHN, DEPUTY DIRECTOR, ARKANSAS DIVISION OF CORRECTION | | HONORABLE CARA CONNORS, JUDGE |
| | APPELLEES | AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

Appellant Morris Koontz, an inmate incarcerated in the Arkansas Division of Correction (ADC), appeals from the Pulaski County Circuit Court's order dismissing his pro se petition for judicial review filed pursuant to the Arkansas Administrative Procedure Act (APA), codified at Arkansas Code Annotated sections 25-15-201 to -221 (Repl. 2014 & Supp. 2021). The circuit court granted appellees' motion and dismissed the petition with prejudice, concluding that it (1) failed to state facts upon which relief can be granted under the APA and (2) was not filed within the thirty-day period set out in section 25-15-212(b)(1)(B). In his pro se appeal, Koontz argues that the circuit court abused its discretion

by dismissing the petition. Because the petition was untimely filed and, in any event, failed to state a sufficient basis for judicial review under the APA, we affirm.

## I. *Standard of Review*

The standard of review for granting a motion to dismiss is whether the circuit court abused its discretion. *Muntaqim v. Payne*, 2021 Ark. 162, at 3, 628 S.W.3d 629, 634. An abuse of discretion occurs when the court has acted improvidently, thoughtlessly, or without due consideration. *Id.* In reviewing the circuit court's decision on a motion to dismiss under Arkansas Rule of Civil Procedure 12(b)(6), we treat the facts alleged in the operative complaint as true and view them in the light most favorable to the party who filed the complaint. *Id.* In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.* However, under our fact-pleading requirement, a complaint must state facts, not mere conclusions, to entitle the pleader to relief. *Id.*

## II. *Background*

Koontz filed his pro se petition for judicial review on July 13, 2023. In the petition, he sought judicial review of two ADC decisions in prison grievances he filed relating to his assignment to restrictive housing, alleging that appellees failed to adhere to ADC policy and procedures and state and federal law in violation of his constitutional rights. The first of the two decisions relates to a prison grievance that Koontz filed on January 20, 2023, in which he complained as follows:

2

On January 12, 2023, I went before Director W. Straughn for release from max at which time he told me the same thing he said in 2017, 2018, 2019, 2020, 2021, and now 2023, which is he is going to see what he can do. I've been in max since June 2012. I completed the 18-month program in 2014 and the re-entry/step-down program in October 2017 by being transferred to another unit. In November 2016, then Director D. Reed told me that I would be eligible for release upon completion of the re-entry/step-down program. I was released in October 2017 by my transfer to Ester Unit in Pine Bluff. I was then re-assigned due to my transfer by Director Straughn, Warden G. Lay, and Warden M. Jackson. A precaution that had been placed on me by Straughn was removed by Director D. Reed. I am a Class 1c inmate and have completed every program told to complete for release, but this director refuses to release me and told Warden M. Jackson during Director Review that he was instrumental in my placement and will not be letting me out. This director's behavior is unprofessional and partial. He cannot be objective in my release because he is personally involved. He should not be allowed to be involved with any of my classification hearings. At the last Director Review, he was discussing my file before the inmate who came in behind me. This man is intending to do me harm and is harming me by continuing my segregation and denying me basic human rights.

On March 1, 2023, the warden issued the following decision:

Ms. Smith, Max Classification Officer, stated that you were seen on January 12, 2023, for Director Review. She further advised that you will be reviewed for possible transfer by Director Straughn. Your grievance is without merit.

Koontz appealed the warden's decision to the director. On March 22, 2023, the director issued a decision denying Koontz's appeal as follows:

After review of your appeal and supporting documentation, I find you have failed to provide any evidence to substantiate your allegations. Without further evidence, I must concur with the Warden's response of no merit.

The second decision relates to a March 1, 2023 prison grievance in which Koontz complained as follows:

I wrote Max Classification (EARM) requesting a copy of the Director Review Classification Action Sheet from January 12, 2023, along with those from the

five (5) previous Director Review hearings under Deputy Director W. Straughn (2017 to present), and the reasons for my continued confinement on February 23, 2023. I received a response on February 28, 2023, stating that the information requested could no longer be provided, per Director Straughn. This unit's policies and directives, as well as state and federal law, state that an inmate shall be informed of the reasons of his continued segregation at the hearing and in writing. On January 12, 2023, I was escorted to Director Review by Sgt. B. King and CO II C. Sanders (A-MAX) (in my underwear), and at the meeting, Director Straughn never told me or gave me reasons for my continued segregation. I have been assigned to administrative segregation/restrictive housing since June 2012 to the present and, since that time, have only been found guilty of three (3) disciplinary infractions (in June 2012, June 2015, and February 2018). When I was released from restrictive housing in 2018, Director Straughn personally had me transferred back and re-classified for his own sad and personal reasons. He should not be allowed to be involved in my classification meetings because he cannot be **** and he is breaking the law.

On April 5, 2023, the warden issued the following decision:

Ms. Smith, Max Classification Officer, stated that inmates are no longer allowed printouts from eOMIS. She further advised that all classification forms are completed in eOMIS; there are no longer hard copies. Ms. Smith also stated that you are aware you are assigned to restrictive housing per the director. Therefore, your grievance is without merit.

Koontz appealed the warden's decision to the director. On April 24, 2023, the director denied Koontz's appeal, stating, "After reviewing your appeal and supporting documentation, I concur with the Warden's response."

In his petition for judicial review of these decisions, Koontz claimed that (1) he has been denied meaningful review of his long-term assignment to segregated housing in violation of his due-process rights; (2) he has been treated differently than other similarly situated prisoners because other prisoners have the opportunity to be heard for release back into general population by unit classification at 60-day intervals; and (3) he has been

"subjected to cruel and unusual punishment" by being confined with no "out of cell time, no yard/recreation time," one to two showers per week, no haircuts or shaves, and "no access to programs or materials to aid in [his] rehabilitation process." On April 9, 2024, the circuit court granted appellees' motion to dismiss and entered an order dismissing Koontz's petition for the following reasons: (1) failure to state facts upon which relief can be granted under the APA; and (2) failure to file the petition within the three-day period, as required by Arkansas Code Annotated section 25-15-212(b)(1)(B).

III. *Discussion*

Under the APA, a petition for judicial review must be filed "within thirty (30) days after service upon the petitioner of the agency's final decision[.]" Ark. Code Ann. § 25-15-212(b). This thirty-day period begins to run when an inmate is served with a copy of the ADC's decision. *Koontz v. Hobbs*, 2014 Ark. 232, at 4 (per curiam). When a petition is filed outside the thirty-day window, it is untimely, and the petitioner is precluded from seeking relief under the APA. *See id.* (dismissing appeal "[b]ecause it is clear that appellant was untimely in seeking judicial review under the APA").

The record in this case supports the circuit court's conclusion that the July 13, 2023 petition for judicial review was filed more than thirty days after Koontz had been served with a copy of ADC's decisions, the last of which was issued on April 24, 2023.[1] While Koontz

---

[1]As mentioned, the first decision was issued on March 22, 2023. Koontz asserts that he mailed a petition for judicial review on "April 13, 2023, (22) days after final agency decision[.]" Even accepting April 13, 2023, as the date of service of the decision, Koontz's petition was filed well beyond the thirty-day period.

may not have been served with a copy of the April 24, 2023 decision on the date that it was issued, the record reflects that he was served with a copy no later than May 8, 2023.[2] In a "Notice" appended to his petition, Koontz indicated that he mailed the petition on "5-8-23 (14) days from agency final denial of administrative redress." Even if we accept May 8, 2023, as the date of service, the petition was not filed until July 13, 2023, which is more than thirty days after May 8, 2023.

In response to appellees' motion to dismiss, Koontz acknowledged that his own failure to comply with procedural rules and requirements for filing caused the circuit clerk to reject and return his petition at least three times before it was finally filed on July 13, 2023.[3] Nevertheless, he contends that his failure should be excused, alleging that from April to June 2023, the prison law library's copy machine was broken, and the law library was not

---

[2]Koontz does not say when he was served with a copy of either decision.

[3]According to Koontz, the circuit clerk returned his petition for judicial review because he failed to include the required cover sheet and failed to complete an affidavit in support of the in forma pauperis (IFP) petition he tendered on May 30, 2023. *See* Ark. R. Civ. P. 72(b) (providing that all IFP petitions "shall be accompanied by an assertion of indigency, verified by a supporting affidavit[,]" and "[a]ny petition not in compliance with this provision will be returned to the petitioner"). A proper completed IFP petition with supporting affidavit was eventually filed on July 11, 2023, which the circuit court granted on July 13, 2023. The circuit clerk, accordingly, filed the petition for judicial review the same day. *See Penn v. Gallagher*, 2017 Ark. 8 (per curiam) (approving circuit court policy requiring clerk, upon receipt of an inmate civil-case complaint/petition but without requisite filing fee, to confirm pleadings are accompanied by the proper completed documents, including cover sheet and all IFP forms and, if any form is incomplete or omitted, requiring clerk to return complaint/petition with notice of incomplete filing to the inmate indicating what documents must be completed and/or included, before submitting the documents to circuit judge for ruling on IFP petition).

providing any legal aid or services. According to Koontz, "all these delays should not have rested at [his] feet."

Our supreme court has consistently held that the burden to conform with procedural rules applies even when a petitioner proceeds pro se since all litigants must bear the responsibility for conforming to the rules of procedure or demonstrating good cause for not so conforming. *See Hill v. State*, 2014 Ark. 57, at 3 (per curiam) (holding that petitioner's alleged learning disability and lack of access to prison law library was not good cause for the untimely filing of postconviction petition). As the court explained, if it "were to permit exceptions to compliance with procedural rules merely because an incarcerated appellant could point to some difficulty in complying with procedural requirements caused by his or her incarceration or lack of education, there would be little use in promulgating procedural rules, as an appellant could simply bypass the rules by claiming the burden of incarceration or lack of knowledge." *Plessy v. State*, 2014 Ark. 164, at 3 (per curiam). The fact that a petitioner is proceeding pro se does not in itself constitute good cause for the failure to conform to the prevailing procedural rules. *Ester v. State*, 2009 Ark. 442, at 1 (per curiam). Furthermore, when proceeding pro se, it is not the responsibility of the circuit clerk, circuit court, or anyone other than the petitioner to perfect an appeal. *Id*. Moreover, to the extent that Koontz contends his petition should be considered filed when it was placed in the prison mailroom, his argument is unavailing. *See McDaniel v. Hobbs*, 2013 Ark. 107, at 3-4 (per curiam) ("This court has never adopted the 'prison mailbox rule,' wherein an item is considered filed when placed in the prison mail room.").

7

Applying this precedent, we must conclude that Koontz failed to rebut the presumption that his petition was not timely filed. *See Koontz*, 2014 Ark. 232, at 5 (citing *Linell v. Norris*, 2009 Ark. 303, 320 S.W.3d 642). Accordingly, we hold that the circuit court's dismissal of the petition as untimely filed was not an abuse of discretion.

While we affirm on the basis of untimeliness, we note that the circuit court also properly concluded that Koontz's petition fails to allege facts upon which relief can be granted under the APA. When an inmate challenges the implementation of administrative policies and procedures, his petition must allege a constitutional question sufficient to raise a liberty interest merely to fall within the classification of claims subject to judicial review. *Wood v. Ark. Parole Bd.*, 2022 Ark. 30, at 4, 639 S.W.3d 344. Judicial review of an administrative decision, moreover, is available to an inmate only if the petition raises a constitutional question sufficient to assert a liberty interest *and* alleges a fact-based constitutional violation. *Muntaqim v. Kelley*, 2022 Ark. 5, at 3. Based on the allegations in Koontz's petition and the two ADC grievance decisions attached to the petition, the first "final agency action" of which Koontz seeks judicial review involves a hearing that he attended on January 12, 2023, "before director W. Straughn for release from max." The result of this hearing was Straughn's telling Koontz that he was "going to see what he can do," which, according to Koontz, is the same thing Straughn told him when he appeared at review hearings before Straughn in 2017, 2018, 2019, 2020, and 2021. It is hard to see how Koontz was even injured by Straughn's "action" in these circumstances, much less that he was deprived of some constitutionally protected liberty or property interest. At best, Koontz's

8

allegations show that he received periodic review of his housing assignment and was afforded an opportunity to be present at the review hearings, which—assuming he had a liberty interest protecting against his continued assignment to restrictive housing—was more process than he was owed. *See Spann v. Lombardi*, 65 F.4th 987, 992 (8th Cir. 2023) (only informal, non-adversary due-process procedures are required for prisoner's placement in segregation; while period review of assignment is required, presence at a hearing is not).

The other "final agency action" of which Koontz seeks judicial review involves a request he made to "Max classification (EARM)" on February 23, 2023, for copies of the "Classification Action Result Sheet" from his "Director Review" on January 11, 2023, and from his "Director Reviews under Deputy Director W. Straughn" from "2017 Til Present" and for Straughn's "reasons for continued confinement" relating to his January 2023 "Director Review." Koontz asserted that prison "policies and directives as well as state and federal law" state that an inmate "shall be informed of the reasons of his continued segregation at hearing and in writing." The "Max Classification Officer" responded to Koontz's request, stating that the requested classification forms are completed in eOMIS, and "inmates are no longer allowed print outs" from eOMIS. She also stated that "you are aware you are assigned to Restrictive Housing per the director." ADC policy restricting access to eOMIS print outs, however, does not create a liberty interest to which due process can attach. *See Muntaqim*, 2019 Ark. 240, at 4-5, 581 S.W.3d 496, 500 (there is no liberty interest in restricted privileges). Nor does the language of a particular prison regulation. *Id*. And Koontz has no liberty interest in having prison officials follow state law or ADC policy.

9

*Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). The informal, non-adversary due-process procedures applicable to an inmate's placement in restrictive housing, moreover, do not require justification for the inmate's continued assignment following periodic reviews. *Hamner v. Burls*, 937 F.3d 1171, 1180 (8th Cir. 2019).

Koontz's assertions that his housing reviews have been "bogus" are conclusory in nature and therefore insufficient to show a deprivation of a liberty interest. *Muntaqim*, 2019 Ark. 240, at 3, 581 S.W.3d at 499. Other allegations in his petition, and in the documents attached to his petition, moreover, confirm that Koontz received periodic review of his housing assignment, which is all that due process requires. *Spann*, 65 F.4th at 992. Indeed, in response to appellees' motion to dismiss, Koontz admitted that he has had numerous thirty- and sixty-day reviews. His dissatisfaction with the results of those reviews and with prison officials' implementation of ADC policy and procedures does not allege a constitutional question sufficient to raise a liberty interest. Accordingly, even if the petition had been timely filed, the circuit court's dismissal for failure to state facts upon which relief can be granted was not an abuse of discretion.

Affirmed.

THYER and BROWN, JJ., agree.

*Morris Koontz*, pro se appellant.

*Tim Griffin*, Att'y Gen., by: *Laura Purvis*, Ass't Att'y Gen., for appellee.